## N. H. HOLT *v.* THE STATE.

1. PETIT JURORS — PRACTICE. — The overruling of a good challenge for cause is not material error where it does not affirmatively appear that the ruling forced an objectionable juror upon the defendant.
2. SAME — PRACTICE IN THIS COURT. — Unless objection is shown to some one or more of the jury who tried the case, the rulings of the trial court upon the competency or incompetency of jurors will not be inquired into in this court.

3. SAME. — But if, after the defendant exhausted his peremptory challenges, an objectionable juror was forced upon him, such ruling of the court will be reversed.

4. PRACTICE. — Witnesses having been placed under the rule, the power of permitting even counsel to confer with them is one committed to the discretion of the trial court, and that court is authorized to prescribe the conditions under which such conference shall be conducted.

5. SAME. — The refusal of the court to permit the accused to retire and join his counsel in a conference with witnesses under the rule was not error.

6. EVIDENCE. — The exclusion of testimony to the effect that a third party has admitted that he did the killing, is not error upon a trial for murder.

7. SAME — THREATS. — Evidence of threats against the deceased, made prior to the killing, by parties other than the accused, is inadmissible.

8. SAME — CASE STATED. — Several witnesses having testified that the accused was the person who committed the homicide, the accused, upon cross-examination, proposed to show by the witnesses what causes or reasons, if any, were assigned by the by-standers for the killing. *Held*, irrelevant and hearsay, and properly excluded.

9. SAME — RES GESTÆ. — The remarks or observations of a crowd present at the commission of an offence are not *res gestæ*, but hearsay, and as such inadmissible. See the opinion *in extenso* for an elaboration of this ruling.

10. SELF-DEFENCE. — An apprehension of future danger does not justify a homicide. The apprehension must be present and the danger imminent at the time of the homicide. See the opinion *in extenso* for state of facts to which this rule is applied.

11. NEW TRIAL — CASE STATED. — One ground of the motion for a new trial was that the jury carried with them in their retirement, and consulted in their settlement of differences about the evidence, a certain statement of the testimony taken by attorneys on the trial. Counter-affidavit shows that the statement so taken and consulted was one made out by the attorneys for the defence. *Held*, that in view of such fact, and in the absence of proof to the contrary, this court cannot presume that the accused was prejudiced by this action of the jury, and the court below did not err in overruling a motion for a new trial.

APPEAL from the District Court of Denton.   Tried below before the Hon. J. A. CARROLL.

In the town of Pilot Point, in Denton County, on the fifteenth day of August, 1863, one Beard, a prisoner at that time confined in a house, was most foully assassinated.   On the twenty-second day of March, 1879, nearly sixteen years later, the grand jury of Denton County found an indict-

ment charging the appellant with the commission of the crime. He was put upon his trial at the September term, 1879, of the District Court of Denton County, and on the seventh day of October, 1879, he was adjudged by the jury to be guilty of murder in the first degree, and his punishment fixed at confinement in the penitentiary for life.

J. H. Sullivan was the first witness introduced by the State. He testified, in substance, that in 1863 he resided about seven miles west from Pilot Point, in Denton County. He remembers that a man named Beard, whose given-name he does not know, was killed during the summer of that year. The witness, Morris Wormington, and Andy Reynolds were guarding the deceased, as a prisoner, on the day of the homicide, confining him in a storehouse on the east side of the square in Pilot Point. It was in this house that the killing took place. The house had three doors — one on the east end near the south-east corner, one in the south side near the south-west corner, and one in the west end. The east door was fastened, at the time of the killing, by a piece of flooring-plank nailed to the door-facing, but the witness does not know how the west door was fastened. It was closed. Witness and his companions on guard were relieved that morning, he thinks, by James Merchant. When witness left the house, the deceased was sitting on a nail-keg, and, he believes, was entirely alone. He does not remember that any one was or was not left at the south-west corner door. He saw Mr. Bellew occasionally at or about the door, but saw no one in the house when he left but the deceased, and thinks he would have seen any one else, had they been there. Witness, Wormington, and Reynolds went towards the public well, twenty or thirty yards from the house which they left. Witness turned around at this point and saw some one going in the house, and heard some one remark that "Beard was going to be killed." He then heard two or three shots, heard some one halloo, saw some one come out of the house and go north towards his horse,

and saw him arrested. The man who went in and came out of the house was called Hous Holt. Some eight years passed before the witness saw the man again, and, though he can't say positively, thinks it was Hous Holt. (It appears that appellant was commonly so called.) The witness went into the house a short time after the shooting, and saw the deceased a corpse. Blood was on his head and breast. Witness had left him well a short time before, and saw no arms about his person. The shooting occurred between five and ten minutes after the witness left the house, on being relieved from guard. The witness saw a man there who was called Henderson Holt. He had a plain scar on his face, that was redder than the rest of his skin. He was not so tall as Hous Holt. One of the two Holts (brothers) had darker hair than the other. It was not Henderson Holt who went into or came out of the house, or who was arrested. At the time the man was arrested, the crowd said that Hous Holt had killed Beard. The cross-examination failed to change this testimony in the least. The witness did not remember having previously told Mr. Hare or Mr. Piner that one of the folds of the west door was open, and did not think he made such a statement. He did not know the present whereabouts of Wormington or Reynolds.

Aaron Bellew was next placed on the stand by the State, and identified the accused. Witness had lived in Texas twenty-three years, and in 1863 lived one and a half miles from Pilot Point, Denton County. His first knowledge of the accused was during the year when the difficulty occurred in which Beard was killed in Turner's storehouse in Pilot Point. Witness had been on guard at the door, and had been relieved by R. F. Black a short time before the shooting in the house. He had turned around on being relieved, but had not left the place where he was standing, when Hous Holt came up, opened the door, went in, and closed the door; and presently witness heard three or four shots, and immediately afterwards the appellant came out, with a

pistol in his hand. He was immediately arrested. Witness went in the house after appellant came out and was arrested. Dave Turner went in the house first, Morgan and Mr. Cravens followed, and witness followed them. Beard was lying there dead, shot through the breast. Cravens extinguished the fire on Beard's shirt. Witness knows Henderson Holt. It was not he who went in and came out of the house at the time Beard was killed. Witness was standing near the door at the south-west corner of the house, and it was through this door that appellant went in before the shooting, and came out immediately after it. This testimony was not altered or changed by the cross-examination. The witness denied that he had ever stated to Marion Mann or others that the man who did the shooting went in and came out of the west door.

D. H. Turner, Wesley Cravens, and John Morgan testified to substantially the same facts, each fully identifying the appellant as the man who went in and came out of the house at the time of the killing, with a pistol in his hand, and each declaring positively that the man was not Henderson Holt.

Robert T. Black was the first witness introduced by the defence. He testified, in substance, that he was in Pilot Point on the day that Beard was killed, and, at the time of the shooting, was on the square, some thirty or forty yards west from the house in which the shooting took place. He put no one on guard over Beard. He did not put Aaron Bellew on guard, nor did he relieve him. He knows that Bellew was there. Immediately after the shooting he saw Aaron Bellew coming from another guard-house, twenty-five or thirty steps from the house in which the deceased was confined. He came out of that house, going north to where the appellant was, with a gun in his hand, holding it in front as if to fire. An hour or two before the shooting, Henderson Holt came to the witness and asked to see Beard. Witness sent a young man named Philpott with

him, giving him the key to the Turner house, but does not know to which door. Does not know in which direction they went, nor that they went together, but presumes they did. Witness did not hear Henderson Holt make any threats against Beard on this occasion. Witness does not know whether or not the key given to Philpott opened all the doors to the Turner house. Does not personally know that it would open any of the doors; never tried it, nor had he seen it tried, but gave it to Philpott as the key to the Turner house. He received it as such key, a day or two previously, he thinks, from James Merchant, who, he believes, lives now in Clay County, Texas.

The substance of the testimony of Dick Skinner, for the defence, was, that he was in Pilot Point on the day Beard was killed, and saw Henderson Holt about half an hour before the killing. He came to witness, about seventy-five or one hundred yards from the Turner house (going in the direction of that house), and borrowed of the witness a pistol that was loaded and in good condition. James and John Shelton, and, the witness thinks, John Merchant, were with him when he gave Henderson Holt the pistol. Witness has known appellant about twenty years. Since 1863 the defendant has lived in Grayson and Denton Counties. In 1863 Henderson Holt was living on Range Creek, in Grayson County, and has since lived in the Indian Nation. Witness does not know when he left Texas, nor does he remember to have seen him in Texas since the killing of Beard. The cross-examination did not change the testimony of this witness. He stayed with the appellant during the night of the day of the killing. He does not remember when he saw the appellant next; it may have been a year. He does not know that the appellant remained in Grayson County all of the time. Henderson Holt and appellant do not resemble. The former has a prominent scar on his face.

Harrison Holt testified, for the defence, that he saw Hen-

derson Holt on the day that he learned that Beard was killed, between sundown and dark, on his father's place on Spring Creek, about twelve miles from Pilot Point. He was then on horseback, alone, about forty or fifty yards from the house. His horse appeared very tired. He left in a few minutes after that, and witness did not see him again for two or three months. He then went to the " Nation." Hous Holt, the appellant, lived then on Choctaw, and was living there when witness went to Jefferson, in 1868. Henderson Holt was the first to tell witness that Beard had been killed, and he stated who did the killing. Witness saw the appellant at his father's house the same evening that he saw Henderson Holt, and thinks he stayed all night at his father's house, and left next day. Witness does not know whether Henderson Holt is living or dead. He was gone when appellant and his father got home. Old man Holt had been from home two or three days, but witness did not know where he had been.

Roger Watson, for the defence, testified that he formed the acquaintance of Henderson Holt before the killing of Beard, and has known him since, but does not know whether he is living or dead. Up to the time of the killing of Beard, Henderson Holt lived in Grayson County, but since that time has lived in the " Nation." Witness heard of the killing directly after it occurred, and on the next day saw Henderson Holt on the road from Pilot Point to Sherman, about two and a half miles from the latter place. He was on horseback, south of and going north towards Sherman. Appellant has lived within six miles of Sherman since witness has known him. Witness, after the killing of Beard, lived within one and a half miles of appellant; saw him about once a week, and knows that he has been absent from the State only on horse-trading expeditions. Witness and appellant both stayed at home during the war, and met during that period every week or so until appellant moved to Pilot Point. Has seen appellant about Sherman. Hous and

Henderson Holt were not complexioned alike; the latter had a red complexion, and his hair was not very dark.

The opinion indicates such other matters as are involved in the rulings.

*Throckmorton & Brown*, and *Hare & Head*, for the appellant. The juror Hazlehurst was disqualified as a juror. 1. Having a fixed opinion that would require evidence to remove it. 2. That he could not try the case as if he had heard nothing about the matter. 3. He had a bias or prejudice in the case from hearsay. Code Cr. Proc., art. 636; *Rothschild* v. *The State*, 7 Texas Ct. App. 519.

The ruling of the court as to the competency of Hazlehurst worked an injury to defendant, he having been forced to exhaust his challenges before a jury was obtained. *Burrell* v. *The State*, 18 Texas, 730.

The court erred in excluding evidence offered by defendant, as shown by bills of exception, because the evidence had been admitted that "the people said" that defendant killed deceased, and the evidence offered was part of the same statement, showing the grounds of the statements and explaining them. *Massey* v. *The State*, 1 Texas Ct. App. 569; Code Cr. Proc., art 757.

The court erred in excluding the evidence offered by defendant which showed the excited condition of the public mind, and that the life of the defendant's father was in danger by reason of the conduct of deceased. A mob was assembled in the town, and defendant was apprised of his father's danger immediately or shortly before the killing, and the surroundings and circumstances were such as to preclude the idea of calm deliberation. *McCoy* v. *The State*, 25 Texas, 33; *Atkinson* v. *The State*, 20 Texas, 522; *Jordan* v. *The State*, 10 Texas, 499.

The court erred in excluding the evidence of threats and statements made by Henderson Holt. The evidence shows that Henderson Holt borrowed a pistol and went in the

direction of the house where the deceased was killed.   Defendant was entitled to have these circumstances submitted to the jury, to determine the degree of homicide of which he was guilty.

The court refused to permit defendant to be present while his counsel were conferring with the witnesses.   Nothing in the case appears to justify this harsh ruling against one who was being tried for his life.

The jury had a written statement of the evidence which they used in their deliberations.   This was surely not what the law contemplates.   The verdict should be the result of the evidence as detailed and remembered by the jury.

*Thomas Ball,* Assistant Attorney-General, for the State.

WHITE, P. J.   On the fifteenth day of August, 1863, one —— Beard, who, it seems, was a prisoner confined in a guard-house at the time, was most foully assassinated in the town of Pilot Point, in Denton County, Texas.   Nearly sixteen years thereafter, — viz., on the twenty-second day of March, 1879, — this appellant was indicted as the party who committed the murder, and, having been brought to trial on October 7, 1879, he was convicted, being found guilty of murder of the first degree, and his punishment affixed at confinement in the State penitentiary for the term of his natural life.

A number of questions were raised on the trial, principally with regard to the exclusion by the court of testimony offered on the part of defendant, and all of which are elaborately set forth in eighteen voluminous bills of exception.

With regard to the first bill of exceptions, which has reference to the ruling of the court in holding the juror Hazlehurst competent, and compelling defendant to challenge him peremptorily, though it is stated that afterwards defendant exhausted all of his peremptory challenges, there is no pretence that any of the jurors composing the panel,

as subsequently made after the challenges were exhausted, were objectionable to defendant, or that either of them would have been challenged peremptorily if his challenges had not been exhausted. Unless objectionable jurors were finally put upon him, no injury was done him, and he has no just ground to complain. *Myers* v. *The State*, 7 Texas Ct. App. 653. We are aware that a different rule obtains in some of the other States, as for instance in Kansas, where it is held that if the court has improperly overruled a challenge for cause, the error is ground for reversal, notwithstanding the juror is afterward challenged peremptorily by the defendant, if the defendant exhausts his peremptory challenges, because the defendant has thereby been deprived of his right to peremptorily challenge one of the jurors who sat upon the trial. *The State* v. *Brown*, 15 Kan. 400; 2 Hawley's Am. Cr. Rep. 423. Instead of the defendant's being deprived of his peremptory challenge, as stated, he has in fact exercised it, in our opinion, for the very purpose for which the law, as a matter of grace, conceded it to him, viz.: to rid himself of an objectionable juror. If other jurors, free from *objection*, are put in the box after his challenges are exhausted, he has no need for further challenges; since all the law demands, and all a defendant could ask, is that the jury which finally tries the case is an impartial one. Unless objection is shown to some one or more of the jury who tried the case, the antecedent rulings of the court upon the competency or incompetency of jurors who have been challenged and stood aside will not be inquired into in this court. But if one objectionable juror is forced upon the defendant after he exhausts his peremptory challenges, then he will be entitled to have the action of the court reversed.

Another bill of exceptions was saved to the refusal of the court to permit defendant to retire from the court-room and be present at the conference of defendant's counsel and his witnesses who were under the rule. We know of no

law, and counsel have cited none, in support of defendant's right in this respect. When witnesses are placed under the rule, it is a matter entirely discretionary with the court as to whether any one shall be permitted to confer with them, and, if permitted, to prescribe the terms and manner in and upon which such conference shall be conducted. *Brown* v. *The State*, 3 Texas Ct. App. 294. We see no error in the ruling in this particular.

It would be a needless as well as profitless consumption of time to attempt to notice *seriatim* the other fifteen or sixteen bills of exception, relating to evidence excluded by the court as inadmissible. The substance of these various bills may be grouped together and formulated under three subdivisions : —

1. The State's evidence having established that the deceased (Beard) was under guard when killed, the defendant proposed to inquire into the causes of his (deceased's) imprisonment and detention, with a view, as alleged, of showing the following facts, viz. : That the people of the county had organized a vigilance committee to investigate and suppress a supposed conspiracy formed by negroes and white men inimical to the Confederate government to destroy the lives and property of the people of Denton and the adjoining counties ; that numbers of citizens had been arrested, tried, punished, and some actually hung, by this committee ; that deceased (Beard), who had been arrested as one of the conspirators, had subsequently turned public informer, and that from information derived from him old man Holt, the father of defendant, with others, had been arrested, imprisoned, placed in irons, and their lives put in great jeopardy ; that on the day of the killing a large number of persons, drawn thither by these cirumstances, were in Pilot Point, and the public excitement was intense.

The right claimed by defendant to have these facts adduced in evidence was claimed upon the ground that they

would tend to show that if defendant killed Beard, then the killing, owing to such surroundings, was the result of a sudden, rash, inconsiderate impulse or passion, and not the act of a calm, sedate, deliberate mind or formed design, and consequently was not murder of the first degree.

2. That, Beard having informed upon other parties, these parties had also threatened to take his life, and had equal opportunities with defendant to do so ; that Henderson Holt, a brother of defendant, had not only made such threats, but had prepared himself to execute them, and a short time before the killing was seen going in the direction of the house in which Beard was confined.  Not only this, but that Henderson Holt, on the evening after the killing, and again on the next morning, told parties that he had in fact committed the deed.

3. That, when the State had proven that immediately after the killing the crowd said the slayer was this defendant (Hous Holt), defendant had the right and was entitled, on cross-examination of the witnesses, to have them state the reasons assigned by the crowd at the time why defendant had killed Beard.

All this evidence was, upon objection by the State, excluded as hearsay, irrelevant, and inadmissible, and not *res gestœ*, or calculated to throw light upon the transaction.

The case, strictly speaking, is not one of circumstantial evidence alone.  For the facts developed show that at the time of the killing there was no one in the house but Beard and the party who killed him.  There can be no question of this fact.  They further show, from a number of witnesses, that this defendant, whom they knew and recognized then and now, just an instant or so before the killing, was seen, with pistol in hand, to approach and enter the house ; and immediately thereafter several shots are heard in the house, and defendant is again seen to emerge from the house by the door at which he had entered, and to go in the direction of his horse, which he had mounted, or was attempting to mount,

when he was arrested. Entering the house instantly, the witnesses found only the dead body of the murdered man; and there was no opportunity for any one to escape from the house save by the door through which the defendant had passed in going in and coming out, because all other sources of ingress and egress had been and were securely fastened. Under such circumstances there can, then, we conclude, be no doubt that defendant, and he alone, committed the deed.

No error was committed by the court in excluding evidence that other parties had threatened to kill deceased, nor that Henderson Holt had admitted that he had killed him. Mr. Wharton, in his work on Criminal Evidence, says: " On an indictment for murder, the admissions of other persons that they killed the deceased, or committed the crime in controversy, are not evidence, and evidence of threats by other persons is inadmissible." Whart. Cr. Ev. (8th ed.), sect. 225; *Sharp* v. *The State*, 6 Texas Ct. App. 650; *Boothe* v. *The State*, 4 Texas Ct. App. 202; *Walker* v. *The State*, 6 Texas Ct. App. 576; *Bowen* v. *The State*, 3 Texas Ct. App. 618; 58 Ala. 372.

So far as the testimony is concerned which it is claimed would show such condition of circumstances as would tend to make the case one of a killing upon sudden impulse, and not murder of the first degree, the evidence fails to disclose that, at the time of the killing, the father of defendant was then held in arrest, chains, or imprisonment by the vigilantes. If he had previously been arrested, he must have been also released; and if any threats had been made against him, there is no evidence that they were about to be put into execution at the time by any one. On the contrary, defendant's own witness, Harrison Holt, testifies that the defendant, his father, and his brother were all at the father's house, twelve miles from Pilot Point, on the evening and night after the killing. It is impossible that the Holts, or either of them, could have been in any immediate or pressing danger of mob violence of any sort, from information derived

from Beard or any one else, at the time of the homi-
cide.   Such pretence is positively rebutted by the fact
that, though defendant himself was arrested immediately
after the killing, with the blood of his victim warm upon his
hands, and when any previous excitement or animosity
would naturally have been intensified to the highest pitch.
by the act, he was not only not killed, or even imprisoned
for the deed, but went home unharmed and unmolested with·
his father that evening, and stayed, as testified by Harrison
Holt, at his father's house that night.

" No apprehension of danger previously entertained will
justify the commission of homicide : it must be an apprehen-
sion existing *at the time* the prisoner struck the blow."
*The People* v. *Lamb* (41 N. Y.), Horr. & Thomp. Cases on
Self-Defence, 646.

If his father had been imprisoned previously, but was not
at the time of the killing, then, if the killing was to avenge
the previous wrong, the defendant was actuated by revenge
and malice, and the killing could have been nothing short
of murder in the first degree.   But take the other view of
the case : his father was not under arrest at the time, but,
on account of information derived from Beard, he was likely
to be arrested at some future time and placed in danger,
wherefore defendant took Beard's life.   Will any one pre-
tend to say that such a killing would not necessarily imply
premeditation and deliberation, and could consequently be
nothing short of murder of the first degree?   We think not.
With the facts as they really existed, the court could have
seen nothing in the case but an assassination, — a murder
in the first degree, — and the evidence sought could in no
way either elucidate, justify, or excuse the homicide, and
was wholly irrelevant.

Again : The court did not err in refusing to permit the
witnesses, after stating that the crowd had said that Hous
Holt committed the deed, to state on cross-examination
what reasons or causes, if any, they gave why he killed him.

The testimony was irrelevant, and was hearsay. Doubtless, if the testimony as to what the crowd said about its being Hous Holt had been objected to at the time by defendant, it also would have been excluded as hearsay. *Bradshaw* v. *The Commonwealth*, 10 Bush, 576.

With regard to *res gestæ* Mr. Wharton says : " The question is, is the evidence offered that of the event speaking through participants, or that of observers speaking about the event? In the first case, what was thus said can be introduced without calling those who said it ; in the second case, they must be called." Whart. Cr. Ev., sect. 262. Again : " On the same principle, the cries of a mob, led by parties tried afterwards for riot and unlawful meeting, can be received against the defendants, no matter at what time during the continuance of the riot such cries were uttered. But the comments and criticisms of observers cannot be introduced as *res gestæ*. Such persons must be called in court and examined as to what they saw. Their statements made at the time are hearsay." Id., sect. 263.

" Hearsay evidence is incompetent, as a general rule, to establish any specific fact which is in its nature susceptible of being proven by witnesses who can speak from their own knowledge." *Bradshaw* v. *The Commonwealth*, 10 Bush, 576 ; 1 Greenl. on Ev., sect. 99. Our conclusions are, that the remarks of the crowd which were proposed to be proven were not *res gestæ*, but were hearsay, and inadmissible.

One ground of the motion for new trial was that the jury carried with them into their retirement, and consulted in settlement of their differences about the evidence, a certain statement of the testimony taken by attorneys on the trial, and inadvertently carried out by the jury with the papers in the case. If the verdict could be impeached by a juror's making affidavit of such fact, then the counter-affidavits explain and settle the matter, because they show that the statement so taken and used by the jury was the one prepared and made out by defendant's own counsel ;

and it is but fair to presume, in the absence of any proof to the contrary, that he could not have suffered any injury by or from it.

It only remains for us to say that we have given this case our most serious and mature consideration, and we find no material error in the conduct of the proceedings on the trial. The charge of the court fully and ably met the issues, and the evidence, in our opinion, discloses a most cold-blooded, deliberate assassination of an unarmed, defenceless prisoner. There can be no excuse for such a crime.    True, it was in times of war and bloodshed, — in times of lawlessness and murder, — long years ago, when it would almost seem that the dead past should have buried its dead ; but those facts do not justify or extenuate the horrible crime, and justice long delayed demands his punishment, after giving him a fair and impartial trial according to the due course of the law of the land.

There is no occasion to disturb the verdict and judgment, and they are therefore in all things affirmed.

*Affirmed.*

HURT, J., having been of counsel in the court below, did not sit in this case.